Paula Ann Sutton

rangeoflight@hotmail.com

1411 Everton Pl

Riverside, CA  92507

530-906-8563 (text may work best)

Plaintiff in Pro Per

FILED
CLERK, U.S. DISTRICT COURT
01/11/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: _____AP_____ DEPUTY

# United States District Court
# Central District of California

| | |
|---|---|
| Paula Ann Sutton ) | Case No. 5:23-cv-02103-JGB-SHK |
| **PLAINTIFF** ) | |
| vs. ) | **FIRST AMENDED COMPLAINT** |
| Alejandro N. Mayorkas ) | **For VIOLATION OF THE** |
| Secretary ) | **REHABILITATION ACT OF 1973** |
| U.S. Department of Homeland Security ) | |
| **DEFENDANT** ) | |
| ) | **Demand for Jury Trial** |
| ) | |

1. **COMES NOW** Plaintiff Paula Ann Sutton, in support of her Complaint against Alejandro N. Mayorkas, Secretary of the U.S. Department of Homeland Security (Defendant, DHS, or Agency), hereby alleges as follows:

## NATURE OF ACTION

2. The Plaintiff brings this action under the Rehabilitation Act of 1973, [Public Law 93–112] as amended (Rehab or Rehabilitation Act] for delay, denial and failure to provide reasonable accommodation for her hearing disability while employed by Customs and Border Protection (CBP), a bureau of DHS. A reasonable accommodation is a change in the way things are normally done that allows an individual with a disability to apply for a job, do a job, or enjoy equal access to the benefits and privileges of employment. Federal agencies have a legal obligation to provide reasonable accommodation for their employees and job applicants with disabilities. The accommodation must be feasible, effective, and timely. The employer makes the decision whether to accommodate and if so how; and in making that decision, the employer must effectively engage the requesting individual and take their input into consideration. The employer must expeditiously make accommodation decisions without inordinate delay. If there is an anticipated or actual delay, the employer must engage by keeping the requester in the loop.

3. While the Plaintiff was negatively impacted and seeks justice for herself, this complaint isn't just about her and this situation; it is about the law, civil rights, and treating all people who have disabilities with equity, compassion, and dignity. Injustice to one is injustice to all, and there is need for systemic change.

## JURISDICTION

4. Federal court has jurisdiction over this case because of Plaintiff's employment with a federal agency (Defendant). The Plaintiff filed an Equal Employment Opportunity (EEO) complaint with CBP, hoping to resolve the matter at the lowest possible level. She followed various steps in an administrative process required by CBP, DHS, and the U.S. Equal Employment Opportunity Commission (EEOC) and the parties did not reach resolution. The agency requested summary judgment, which the EEOC law judge granted without having a hearing. On July 10, 2023, the EEOC issued a Dismissal of Request for Reconsideration, and therein stated the right to file civil action in U.S. District Court within 90 calendar days from the date of receiving the mailed decision. Furthermore, this court has jurisdiction under 28 U.S.C. § 1331 and under the Rehabilitation Act 29 U.S.C. § 701 et seq.

## VENUE

5. The venue is proper pursuant to 28 U.S.C § 1391 because the events giving rise to this complaint happened in this district. The Plaintiff resides in Riverside, CA, the same location as the U.S. District Court. Both the Riverside residence and Laguna Niguel duty station are within the jurisdiction of the United States District Court, Central District of California.

## PARTIES

6. Plaintiff: Paula Ann Sutton, 1411 Everton Pl, Riverside, CA 92507. The Plaintiff has a targeted disability – deafness. She has severe permanent

bilateral sensorineural hearing loss, and associated conditions – tinnitus and noise sensitivity called recruitment, an abnormal growth in loudness perception once threshold is reached.

7. Defendant: Alejandro N. Mayorkas, Secretary, Office of the Executive Secretary, MS 0525, Department of Homeland Security, 2707 Martin Luther King Jr Ave SE, Washington, DC  20528-0525

## STATEMENT OF FACTS

8. **Regarding timeliness** of responding to a reasonable accommodation request, a CBP Directive 51713-007A specifies that reasonable accommodations should be provided as soon as possible but not more than 15 business days from the date the request was initially made. In the case of extenuating circumstances, the time for processing a request and providing the accommodation will be extended as reasonably necessary. The Plaintiff's reasonable accommodation request for a continuation of a private office when she moved from Indianapolis, IN to Laguna Niguel, CA was approved in July 2018 by Dennis Counihan, her second line supervisor. She received notification signed by Mr. Counihan that the reasonable accommodation was temporarily modified in November 2018. Then, she received a letter signed by Ruth Zolock, her supervisor denying her accommodation request in July 2019. It was not reasonable for CBP to take many months to respond to the Plaintiff's request for reasonable accommodation. Her geographic move from Indianapolis to California was contingent on having continued reasonable accommodation. CBP failed to act expeditiously and caused her considerable stress and hardship. It made her feel marginalized, affected her wellbeing, and required her to work extra hard to be a productive employee.

9. **Regarding the interactive process** required by the Rehab Act, the employer's obligation to provide reasonable accommodation is ongoing and does not stop simply because one option is considered not feasible. The interactive process should continue with additional dialogue with the requesting employee regarding alternatives. Such engagement is inclusive and key to identifying effective accommodations. Often, the one requesting accommodation knows how best they can be accommodated. If a particular accommodation would result in an undue hardship, an employer is not required to provide it, but still must consider other accommodations that do not pose an undue hardship. For a large well-funded federal agency with thousands of employees, the threshold for undue hardship must be relatively high. The private office dedicated for the Plaintiff lacked a fire alarm. There was interest in installing a hard-wired alarm in the ceiling. CBP knew about asbestos in the building well in advance of informing the Plaintiff about the issue in November 2018. Between July and November 2018, her first line supervisor, Ms. Zolock was communicating with staff to arrange for the Plaintiff's relocation to the new office location and was apprised of the asbestos issue. Ms. Zolock and Mr. Counihan delayed informing her of the asbestos issue until shortly before her cross-country move in November 2018, after she had contracted movers to transport my possessions from Indiana to California, and after she chose a home to live in near a commuter rail station so she could travel to work. The Plaintiff should have been engaged earlier, as she could have offered suggestions, possibly postponed her move and possibly chosen a different geographic area for her residence until the matter was resolved. Information withheld and interaction delayed

created a hardship for the Plaintiff. When the asbestos issue became apparent in the summer of 2018, Ms. Zolock and Mr. Counihan had a duty to be more transparent and to timely engage her in a good faith interactive process. Instead, they excluded her by not timely interacting or considering her input before making a temporary decision about the reasonable accommodation and notifying her in November 2018.

10. **Regarding undue hardship to CBP**, human resource staffer Scott Ehert claimed that due to asbestos in the ceilings, it would take up to six months and cost roughly $15,000 to $30,000 to install a visual fire alarm in a private office. This was considered an undue hardship. It appears that Mr. Ehert's estimates were inflated. The Plaintiff was interested in knowing what the figures were, and how they were derived, so as part of discovery, she requested information, including an independent government estimate for such work. Nothing other than Mr. Ehert's unsubstantiated figures were provided. The Plaintiff wondered what the source is for such estimates and if Mr. Ehert is a subject matter expert in deriving such estimates. Former GSA building manager Jennifer Kim, who subsequently transferred to CBP informed her that asbestos remediation costs about $3,500 per shift at the Chet Holifield Building. It is doubtful that installing an 8-to-10-inch diameter fire alarm disc in the ceiling is in an extensive facility modification. Based on her knowledge and experience contracting an asbestos remediation company in the private sector, she did not think it would take much time to install such fire alarm and simultaneously provide for asbestos remediation. Furthermore, CBP provided no detail on what other fire alarm technologies they explored. Once learning about the asbestos issue, the Plaintiff suggested

consideration of an inexpensive desktop audio-visual signaling device (e.g., Sonic Alert – HomeAware) that would alert her if a nearby fire alarm was activated. CBP failed to consider the signaling device, a novel alternative. Also, CBP did not consider placing her in an alternative vacant office that had a hardwired ceiling alarm. It was the employer's responsibility to consider these potential alternatives. Moreover, CBP did not properly deal with what they considered to be undue hardship because the cost and time estimates provided by Mr. Ehert were not substantiated, and CBP did not properly engage with the Plaintiff in an interactive process to facilitate identification of other prudent and feasible reasonable accommodations.

11. **Regarding dealing with barriers**, without a private office, the Plaintiff had to reserve a separate room and take her laptop computer and materials to that room to have a meeting/video conference/webinar/lunch and learn, or phone call. She uses speaker phone and computer speakers because ear buds and headphones don't work with her behind-the-ear hearing aids. There is not a level playing field when other employees can perform these functions undisturbed at their desk. The Plaintiff informed Ms. Zolock of this, but she didn't care. As in Indianapolis, the Plaintiff worked in a cubicle setting before being accommodated with a private office, In Laguna Niguel she had to deal with ambient noise her hearing aids pick up in the cube farm (e.g., people talking, phones ringing, printers, paper shredders, custodial trash pick-up and vacuuming, etc.) Since a noise sensitivity condition called recruitment is a characteristic of her hearing loss, she has a reduced tolerance to loudness because the decibel level increases quickly. Therefore, these noises can be disruptive, uncomfortable, and startling. Ms. Zolock had

been apprised of her hearing condition and impacts. Also, it can be distracting and annoying, sitting across from someone who talks a lot on the phone or has interacting frequent visitors, or someone in a nearby cubicle stapling or punching holes in paper for an extended period. The Plaintiff recalls an incident when people sitting at their desks in cubicles on either side of her bantered back and forth about their purchases on Amazon Prime Day. She was careful not to complain about matters involving her co-workers because she did not want to jeopardize copacetic interpersonal relationships. Also, she assumed that her placement in a cubicle was temporary, so she decided to try tolerating the ambient noise longer.

12. **Regarding the chronology of decisions**, on July 5, 2018, the Plaintiff second line supervisor, Mr. Counihan approved her reasonable accommodation request to transfer an accommodation previously approved, a private office on November 10, 2010. An interactive dialogue meeting was not deemed necessary since it was a continuing reasonable accommodation. His November 9, 2018 memorandum did not deny her reasonable accommodation of the continuation of a private office, but rather informed her about a "Reasonable Accommodation Temporary Modification" until a longer-term solution is identified (potentially by completing the project to install the visual fire alarm or re-opening the reasonable accommodation discussion). Working in a cubicle was a temporary measure and not a test to determine if a cubicle under a ceiling-mounted fire alarm was suitable permanent accommodation. Since this was a temporary arrangement, the Plaintiff was not obligated to provide her supervisor feedback on this set-up; however as time continued without resolution of her reasonable

accommodation request, she informed Ms. Zolock that the delay in accommodating her was preventing her from having equal communication access, impacting her ability to have effective communication, taking time away from work, and was adversely affecting her productivity and quality of life. She also had the option of teleworking full-time, but that was not reasonable; she chose to telework part-time, like was offered to co-workers, because it afforded the opportunity to meet and interact with them face-to-face in the office. Also, if she were to telework full-time, it was important for her to be in a rural setting rather than a concrete jungle near a commuter train station. Delays in informing the Plaintiff of the asbestos issue prevented her from moving to a suitable location for full-time telework.

13. The Plaintiff requested and hoped that the audio-visual desktop signaling device would be approved. Initially, Ms. Zolock indicated that it might be approved. The Plaintiff purchased the alerting device, but Ms. Zolock was adamant that the Plaintiff not use it in the office and directed her to take it home. Surprisingly, CBP purchased a similar alerting device which the Plaintiff thought meant that the device and her would be moved into the designated private office. Instead, the device was set up in the cubicle with the intension to give the Plaintiff double protection. She was not consulted about this, and she considered it to be unnecessary, especially since she sat below a ceiling-mounted fire alarm. The Plaintiff continued to inquire with Ms. Zolock about the status of her request to use the desktop alerting device in the private office, but Ms. Zolock delayed responding and said she was waiting for guidance from others. Subsequently, the Plaintiff was subjected to an interactive dialog meeting, which was like starting from scratch to

determine if she has a verifiable qualified disability and how to accommodate her. The focus of the meeting was on her hearing loss and not resolving her accommodation request.

14. The reasonable accommodation game dragged on for eight months until July 3, 2019, when the Plaintiff was issued a vague decision letter by Ms. Zolock informing her that a private office was denied because the assigned office space would not be feasible due to cost to add hearing support (the hard-wired fire alarm with strobe visual alert). The letter did not mention that the Plaintiff's reasonable accommodation request for a private office to transfer with her to the new geographic location was a continuation of the request approved in 2010. The denial was took away her reasonable accommodation and did not offer another accommodation. The letter did not mention monetary cost. It did not mention noise levels. It did not mention other alternatives, such as another vacant office that had a ceiling-mounted fire alarm with strobe. The denial letter did not mention the suggestion the Plaintiff proposed - a desktop audio-visual signaling device in lieu of a hard-wired fire alarm. The Plaintiff was never informed whether her suggestion was evaluated and there was no explanation justifying its denial. The decision letter denied the reasonable accommodation request to continue having a private office the Plaintiff had for eight years yet did not mention or provide evidence that temporary accommodation measures were effective and would become permanent. It is important to emphasize that the July 3, 2019 letter denied the reasonable accommodation solely based on "cost" but did not discuss if and how the cost was substantiated. Also, the letter did not mention other factors that CBP Counsel focused on or that the EEOC Judge relied on in issuing a summary judgment decision.

15. Furthermore, regarding the Plaintiff's second reasonable accommodation request to attend training offered by the Hearing Loss Association of America (HLAA), the July 3, 2019 decision letter from Ms. Zolock denied her request to attend because, "it was not considered to be a reasonable request to support (her) daily work tasks and duties." The reason is vague and misguided. The Plaintiff has hearing loss, which is a communication disorder that may limit the development, comprehension, production, and/or maintenance of speech and language. The HLAA provides training that effectively assists and enables her to better perform her job duties that require effective communication. During the work week there are meetings to attend, phone and video calls to participate in, people to engage, relationships to foster, requests to respond to, and deadlines to meet. She must continually overcome hearing loss challenges/barriers e.g., difficulty hearing well, tinnitus, noise sensitivity, ambient noise, technological deficiencies, lack of awareness/sensitivity/empathy/patience, attitudes, and consequent stress/fatigue/isolation. The HLAA Convention is a premier learning environment for deaf and hard-of-hearing attendees because it offers communication access (e.g., captioning, sign language, hearing loop systems, and hearing loss peers/allies) plus beneficial presentations, workshops, panel discussions, and technological exhibits, that help the Plaintiff keep current on hearing loss etiology and treatment, hearing assistive technology, communication and coping strategies, and leadership and advocacy skills. Such training helps her better live/work in a hearing world; perform essential duties of her job position that requires effective communication; gain capacities and confidence to apply and be considered

for leadership roles; advocate for diversity and inclusion; and be a more useful resource to other employees with hearing loss, those she engages with, and fellow members of the DHS Deaf & Hard-of-Hearing Employee Association.

16. No one at CBP seemed to care that as a person with hearing loss, the Plaintiff must work harder to communicate and must continually self-advocate for reasonable accommodations (e.g., private office, captions, people speaking up at a moderate pace) in order to overcome audio and visual communication barriers. The Plaintiff requests reasonable accommodation because it is a need and right, not a preference or privilege. Dealing with audism, as well as delay and denial of reasonable accommodation requests take time and energy, cause stress and exhaustion, negatively impacts relationships, adversely affects work productivity, and diminishes quality of life.  If the Plaintiff is affected by attitudinal and physical barriers, it is likely other deaf and hard of hearing employees experience this as well. Advocating for herself serves to advocate for others too. It is hoped that federal agencies such as DHS-CBP will raise their standard of care for people with disabilities and take more responsibility in fulfilling their duty to provide timely reasonable accommodation, a fundamental statutory requirement.

## CLAIMS

17. The Plaintiff filed an EEO Complaint at CBP August 21, 2019, claiming the following discriminatory actions: sex, age, physical disability (deafness), and retaliation based on prior EEO activity. In an attempt to resolve the

complaint and streamline and shorten the process, the Plaintiff dropped all claims but the disability discrimination claim. Receiving reasonable accommodation for her disability was deemed most important in order to effectively perform her work and keep her stress level in check.

## CAUSE OF ACTION

**(Disability Discrimination in Violation of the Rehabilitation Act)**

18. Ms. Zolock, the Plaintiff's supervisor and primary decision maker discriminated against the Plaintiff by delaying reasonable accommodation for her targeted disability (deafness); failing to be transparent, effectively communicate, and adequately engage Plaintiff in the a meaningful, good faith, interactive process; failing to consider Plaintiff's recommendations, denying reasonable accommodation, not providing sufficient justification for the denial, and not offering a reasonable and effective alternative. Other CBP employees involved in the matter or advising Ms. Zolock contributed to CBP's failure to take steps to prevent disability-based discrimination. These inactions and actions violated the Rehabilitation Act. 29 U.S.C. § 701 et seq. (Note that the Americans with Disabilities Act (ADA) of 1990 and Americans with Disabilities Act Amendments Act (ADAAA) of 2008 are related laws that require "reasonable accommodation"; however the Rehab Act is most applicable since this case pertains to a federal agency and federal employee.)

## REQUEST FOR RELIEF

19. Agency provide regular, mandatory disability awareness/discrimination training that includes hearing loss. Ascertain that it addresses

ableism/attitudinal and physical barriers, applicable laws and policies, workers' rights to reasonable accommodations, good-faith interactive process, and protection from retaliation.

**20.** Agency update its reasonable accommodation policy as appropriate, addressing workers' rights to reasonable accommodations, laws and policies, good-faith interactive process, and protection from retaliation, as well as supervisor responsibilities.

**21.** Compensation to Complainant, as appropriate, for emotional distress, etc.

**22.** Attorney fees and costs; court fees, and other case-related costs.

**23.** Any further relief which the court may deem appropriate.

## DEMAND FOR JURY TRIAL

**24.** Plaintiff hereby requests a jury trial on all issues raised in this complaint.

Dated: January 11, 2024                    Respectfully Submitted,

/s/ Paula Ann Sutton
Paula Ann Sutton
Plaintiff, Pro Se
530-906-8563 (text if necessary)
rangeoflight@hotmail.com